UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DISH NETWORK, LLC, ECHOSTAR TECHNOLOGIES LLC, and NAGRASTAR LLC, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No.: 3:13-CV-50-TAV-CCS ) |
| BILL WILLIAMSON, | ) ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

Plaintiffs brought this action against Defendant for receiving, intercepting, and using encrypted, copyrighted, subscription-based DISH Network satellite television programming without authorization and without payment to DISH Network, in violation of the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2511 and 2520. Pending before the Court is Plaintiffs' Motion for Summary Judgment [Doc. 10]. Defendant is acting *pro se* and has filed a response to the Plaintiffs' Complaint [Doc. 4], as well as a response to the Motion for Summary Judgment [Doc. 12]. The Court has carefully considered the parties' pleadings and supporting documents, all in light of the controlling law. For the reasons stated herein, the Court finds that Plaintiffs' Motion for Summary Judgment should be granted.

## I. Background

Unless otherwise noted the following facts are taken from Plaintiffs' Complaint [Doc. 1] and are assumed to be true for purposes of this analysis. DISH Network is a multi-channel video provider that delivers video, audio, and data services via a direct broadcast satellite system to approximately 14 million subscribers in the United States. *Id.* DISH Network uses high-powered satellites to broadcast, among other things, movies, sports, and general entertainment services to consumers who have been authorized to receive such services after payment of a subscription fee, or in the case of a pay-per-view movie or event, the purchase price. *Id.*

DISH Network contracts for and purchases the distribution rights for most of the programming broadcast on the DISH Network platform from providers such as network affiliates, pay and specialty broadcasters, cable networks, motion picture distributors, sports leagues, and other holders of programming rights. *Id.* The works broadcast on the DISH Network platform are copyrighted. Dish Network has the authority of the copyright holders to protect these works from unauthorized reception and viewing. *Id.*

DISH Network programming is digitized, compressed, and encrypted or scrambled prior to being transmitted to multiple satellites located in geo-synchronous orbit above Earth. *Id.* The satellites then relay the encrypted signal back down to Earth where it can be received by DISH Network subscribers that have the necessary equipment. *Id.*

The EchoStar Technologies satellite receiver processes an incoming DISH Network satellite signal by locating an encrypted part of the transmission known as the entitlement control message and forwards that message to the access card in the receiver. *Id.* Provided that the subscriber is tuned to a channel he is authorized to watch, the access card uses its decryption keys to unlock the message, uncovering a control word. The control word is then transmitted back to the receiver in order to decrypt the DISH Network signal so that DISH Network programming may be viewed on a television or monitor. *Id.* Each receiver and smart card is assigned a unique serial number which is used by DISH Network when activating the equipment, and to ensure the equipment only decrypts programming that the customer is authorized to receive as part of his subscription package and pay-per-view purchases. *Id.*

IKS Rocket is a pirate Internet Key Sharing (IKS) television service that provides an end-user's modified, IKS-enabled satellite television receiver with control words from the IKS Rocket server. *Id.* The control words supplied by the IKS server to an end-user's IKS-enabled receiver are required to descramble DISH Network's encrypted or scrambled television programming for viewing on an attached television or monitor. *Id.*

Defendant subscribed to the IKS Rocket television service for approximately one year and used that subscription to connect his modified, IKS-enabled satellite television receiver to the IKS Rocket server, resulting in his reception, interception, and use of Plaintiffs' encrypted satellite signals, including the control words found in the signals. [Doc. 10-1]. Defendant intercepted DISH Network's satellite signals and control words

3

in order to view DISH Network's copyrighted television programming without payment of a subscription fee to DISH Network and without authorization. *Id.* Plaintiffs' complaint alleges three counts of unlawful conduct: (1) circumventing an access control measure in violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(1); (2) receiving satellite signals without authorization in violation of the Communications Act, 47 U.S.C. § 605(a); and (3) intercepting satellite signals in violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2511(1)(a) and 2520. [Doc. 1].

Plaintiffs have moved for summary judgment against Defendant. In support of their motion, Plaintiffs rely on their Brief of Law, Declarations of Gregory Duval, Steven Rogers, Thomas Steven Dixon, and Stephen Ferguson [Doc. 10-1]. Plaintiffs ask the Court to enter summary judgment against Defendant for violation of the ECPA, award statutory damages in the amount of $10,000 under the ECPA, award costs in the amount of $815.00 and attorney's fees in the amount of $1,312.50, and permanently enjoin Defendant from intercepting DISH Network's encrypted satellite communications or assisting anyone else in doing same. *Id.*

Plaintiffs have agreed to dismiss with prejudice Court I alleging violations of the Digital Millennium Copyright Act, 17 U.S.C. §1201(a)(1), and Count II alleging violation of the Federal Communications Act, 47 U.S.C. § 605(a), so that a final judgment may be entered in this case. *Id.*

4

Case 3:13-cv-00050-TAV-CCS   Document 14   Filed 11/21/13   Page 4 of 12   PageID #: 181

Defendant has filed two documents in this case, his Answer to Plaintiffs' Complaint, and a response to Plaintiffs' motion for summary judgment. His Answer states:

> This letter is in response to the Summons I received on January 30th regarding Dish Network. I have gotten demand letters from Hagen, Noll & Boyle LLC, asking for 5000.00 dollars and provide a statement saying will not purchase or use illegal services to obtain satellite programming in the future. Sir I have no problem providing you with the statement then or now, I have been unemployed since January 2012 and have no means of paying 5000.00 dollars.
>
> Dear NagraStar,
> It was a foolish decision on my part to subscribe to IKS rocket, and one that I genuinely regret. This situation has been very stressful for me and my family. Borrowing money to pay off my debt to NagraStar will not be easy as I have no assets and/or income other than unemployment. Ultimately I know the purchase of the subscription was wrong. The other part is my deep regret for the fact that I harmed NagraStar by subscribing to IKS rocket, something I did not fully understand until now; for that I am truly sorry. Please accept my apology and my word, that going forward I will not engage in any form of DISH Network piracy – as this experience has proved, it's simply not worth it. . . .

[Doc. 4]. Defendant's response to summary judgment states:

> I submit this letter in response to the motion for a summary judgment. The plaintiffs have made several allegations against me. There has to be more than innuendos and far reaching suggestions of said activity before any judgment could be awarded. So I would simply request you deny this motion and inform the plaintiff that our legal system deals in evidence and fact.

[Doc. 12].

The record shows that Defendant failed to participate in a discovery planning meeting as required by the Court's Scheduling Order and Fed. R. Civ. P. 26(f), resulting in DISH Network filing a unilateral discovery plan. [Doc. 10-1]. Defendant also failed

5

to provide any initial disclosures as required by the Scheduling Order and Fed. R. Civ. P. 26(a)(1). *Id.* Defendant failed to provide any responses to DISH Network's interrogatories, requests for production, and requests for admission, resulting in Defendant's admission of DISH Network's requests for admission pursuant to Fed. R. Civ. P. 36(a)(3). *Id.* The record also shows that Defendant failed to respond to DISH Network's efforts to meet and confer pursuant to the Court's discovery dispute procedures contained in the Scheduling Order. *Id.*

## II. Standard of Review

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed .R. Civ. P 56(a). Initially, the burden is on the moving party to conclusively show that no genuine issues of material fact exist, *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003), and the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Id.* at 323.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question; but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 249 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). The standard for summary judgment mirrors the standard for directed verdict. *Anderson*, 477 U.S. at 250. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter summary judgment. *Id.; Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### III. Analysis

#### A. Violation of the ECPA

Section 2511(1)(a) of the Electronic Communications Privacy Act (ECPA) makes it unlawful for a person to "intentionally intercept" any "electronic communication." 18 U.S.C. § 2511(1)(a). A private right of action is allowed under 18 U.S.C. § 2520 for violations of § 2511. *DirecTV, Inc. v. Bennett*, 470 F.3d 565, 569 (5th Cir. 2006); *see also DirecTV, Inc. v. Taulbee*, 2005 WL 5576222 at *5 (S.D. Ohio Mar. 4, 2005). "Intercept" means the "aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18

7

U.S.C. § 2510(4). Encrypted broadcasts of satellite television programming, such as those transmitted by DISH Network, constitute "electronic communications" under the ECPA. *United States v. One Macom Video Cipher II,* 985 F.2d 258, 160-61 (6th Cir. 1993). DISH Network provides encrypted satellite broadcasts of copyrighted television programming to authorized subscribers that pay DISH Network a subscription fee. Defendant subscribed to the IKS Rocket pirate television service on February 10, 2012. The subscription was for approximately one year. Defendant used his IKS Rocket server to receive DISH Network programming. Defendant connected to the IKS Rocket server by running a program on his computer that would connect his satellite receiver to the IKS Rocket server and receive DISH Network programming.

By connecting his satellite receiver to the IKS Rocket server, Defendant received DISH Network's satellite communications (and the control words contained therein) without authorization, and used them to decrypt and view DISH Network programming for his own benefit. Defendant did not have authorization to do so and benefitted from his engagement in IKS piracy, because he was able to view DISH Network programming without paying a subscription fee to DISH Network.

The evidence establishes that Defendant intentionally intercepted DISH Network's satellite communications in violation of §§ 2511(1)(a) and 2520 of the ECPA. Defendant intended to and did use his IKS Rocket subscription to connect his satellite receiver to the IKS Rocket server and intercept and receive DISH Network's satellite communications.

The undisputed evidence, including Defendant's Answer and response to summary judgment, show that Defendant was a paying subscriber to the IKS Rocket Service and that Defendant intentionally used the service to steal DISH Network programming. Therefore, the Court finds that Defendant violated the ECPA, and Plaintiffs are entitled to judgment as a matter of law against Defendant for his violations of §§ 2511(1)(a) and 2520 of the ECPA.

### B.  Damages

Section 2520(c)(2) authorizes damages, where, as here, a scrambled or encrypted electronic communication has been intentionally intercepted.  *See* 18 U.S.C. § 2520(c)(1)-(2).  The statute sets damages at the greater of :

> The sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or

> Statutory damages of whichever is the greater of $100 per day for each day of violation or $10,000.

*Id.*

Section 2520 provides for damages for a violation of the statute as follows: "(1) preliminary and other equitable or declaratory relief as may be appropriate; (2) damages under subsection (c) punitive damages in appropriate cases; and (3) a reasonable attorney's fee and other litigation costs reasonably incurred." *Id.*

Defendant purchased a one-year subscription to the IKS Rocket service on February 10, 2012.  The record shows that Defendant intentionally intercepted DISH

Network's satellite communications on at least 23 different occasions in violation of §§ 2511(1)(a) and 2520 of the ECPA.

Gregory Duval, Chief Operating Officer of NagraStar testified as to damages suffered by Plaintiffs as a result of Defendant's actions:

> Piracy directly and negatively impacts the revenues earned by DISH Network, EchoStar Technologies, and NagraStar. The injury to DISH Network includes lost programming revenues that would customarily be paid by a legitimate subscriber. DISH Network's average monthly revenue per authorized subscriber is approximately $70. Individuals using unauthorized receivers, however, have unlimited access to DISH Network programming, including premium and pay-per-view channels, the value of which exceeds that built in the average subscriber calculation. Piracy deprives NagraStar and EchoStar Technologies of revenues that would ordinarily be gained from the sale of receivers, smart cards, and other technology to legitimate subscribers.

Declaration of Gregory Duval [Doc. 10-1].

In this case, the Court finds that the statutory damage amount of $10,000 is appropriate. The plain language of the statute directs this award of damages. Accordingly, Plaintiffs' request for statutory damages in the amount of $10,000.00 in accordance with 18 U.S.C. § 2520(c)(2)(B) is **GRANTED**. Pursuant to 18 U.S.C. §2520(b)(3), the Court awards Plaintiffs, as the prevailing parties, their costs in the amount of $815.00 and reasonable attorneys' fees in the amount of $1,312.50.

### C. Permanent Injunction

The Court further finds that Plaintiffs' request for a permanent injunction is appropriate. The ECPA authorizes courts to grant appropriate relief including preliminary and other equitable or declaratory relief as may be appropriate. 18 U.S.C. §

2520(b)(2). The criteria for the issuance of a permanent injunction requires a plaintiff demonstrate, "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC,* 547 U.S. 388, 391 (2006).

The Court finds that based on the Defendant's conduct, Plaintiffs have suffered irreparable injury based on the piracy of their service. In addition, the damages provided for above, while significant, are inadequate to prevent future piracy without injunctive relief. The only hardship to Defendant from this injunction would be to prevent him from engaging in future illegal activity, so the balance clearly weighs in Plaintiffs' favor. The public interest is not disserved by an injunction as it will protect copyrights and help enforce federal law. The Court, having reviewed the record, evidence, and applicable law in this matter, hereby **GRANTS** Plaintiff's Motion for a permanent injunction against Defendant as follows:

> Defendant and anyone acting in active concert or participation with, or at the direction or control of Defendant, are hereby **PERMANENTLY ENJOINED** from circumventing or assisting others in circumventing DISH Network's security system, or otherwise intercepting or assisting others in intercepting DISH Network's satellite signal; and testing, analyzing, reverse engineering, manipulating, or otherwise extracting codes, data, or information from DISH Network's satellite receivers, smart cards, satellite data stream, or any other part or component of the DISH Network security system. This permanent injunction takes effect immediately.

## IV. Conclusion

For the reasons stated herein, the Court hereby **GRANTS** Plaintiffs' motion for summary judgment and motion for permanent injunction [Doc. 10].

ENTER:

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE